## No. 11,923.

STATE EX REL. THE CITY OF NEW ORELANS VS. THE NEW ORLEANS
TRACTION COMPANY, LIMITED.

The respondent having acquired from the city of New Orleans a franchise en-
titling it to construct, operate and maintain a line of street railway through
certain designated streets of the city, the adjudication of which contained the
stipulation that all the·streets through which its tracks are laid shall be main-
tained in first-class order between the tracks and two feet on each of side of said
tracks, *Held* that this convenant does not impose the additional duty of elevat-
ing the entire surface of the street on either side of its track to the height of
its roadbed.

APPEAL from the Civil District Court for the Parish of Orleans.
*King, J.*

*E. A. O'Sullivan*, City Attorney, for Plaintiff, Appellant.

*Farrar, Jonas & Kruttschnitt* for Defendants, Appellees.

Argued and submitted February 29, 1896.
Opinion handed down March 9, 1896.

The opinion of the court was delivered by

WATKINS, J.   The city prays for a writ of *mandamus* to compel
the respondent to reconstruct Julia street, from Dryades street to
St. Charles street; and this claim is based upon the averment that
under an ordinance of the city the respondent acquired certain
franchises, which consisted in the right to construct, operate and
maintain for a period of fifty years a street railroad in and upon
certain designated streets of the relator, and, among others, upon
the street designated above.

That as an incident of the acquisition from the city of the
aforesaid franchise, the respondent came under obligation to relator
to keep and maintain in first-class condition all the streets through
which its tracks shall pass, " between its tracks and two feet on
each side of the tracks."

That, in order to build its tracks, it was necessary for respondent
to procure from the City Surveyor the lines, levels and specifica-

tions to which the work was required to conform; but the tracks as laid by the respondent on Julia street, from Dryades to St. Charles street, were placed at a level of from three to sixteen inches above the actual level of the street; and that as a consequence of the road-bed of the respondent having been so constructed, said street has become absolutely useless, " cutting off one portion of the street from the other. "

Relator charges that under its contract respondent assumed, as at part of its obligation, " to place the whole street in such a condition as its general usefulness to the public would not be impaired,"·and that the respondent knew, before laying the track, that their cars could .not be operated on Julia street without raising its roadbed considerably higher than the then level of the street.

Relator claims that the condition in which the respondent had placed said street, by the manner in which it constructed its road-bed, has greatly damaged the adjacent properties on said street by causing rain water to be dammed up and flood the banquettes thereof, to the serious inconvenience of pedestrians and hinderance to its use as a public·thoroughfare.          ·

That it is the duty of the respondent to raise the street on either side of its track so as to bring the street surface up to the level of its roadbed, and that unless this is done it would be of no practical use to keep its tracks in repair, and the streets between its tracks, and for two feet beyond the tracks.

The respondent alleges that it acquired its franchise from relator, and constructed its roadbed in exact conformity with the lines, levels and specifications it received from the City Surveyor, and that they directed and required that its roadbed through Julia street should be elevated to the height of from. three to sixteen inches above the established grade of that street.

The case of the respondent is very clearly and fully stated in· its return, and we give it in its entirety, as follows, viz.:

" It admits that the city of New Orleans, by Ordinance No. 7462, Council Series, approved April 25, 1893, advertised for sale to the highest bidder the street railway franchise therein set forth and de-scribed, which street railway franchise this respondent purchased and paid the city of New Orleans therefor the sum of one hundred and twenty-five thousand dollars in cash, but this respondent avers that it subsequently transferred the said franchise to the Crescent City

Railroad Company, who is now the owner of the same, and made a contract with the said Crescent City Railroad Company to construct the railroad provided for in the said ordinance, in accordance with the terms and conditions of the said ordinance, and the contract thereafter made between your petitioner and the city of New Orleans before Joseph D. Taylor, notary public, and that this respondent is bound to comply, under its contract with the Crescent City Railroad Company, with all of the terms and conditions of its contract with the city of New Orleans.

"Respondent further admits that a. part of the line of said road runs through Julia street from Dryades to St. Charles street.

"And further answering, respondent avers that the reason why it paid the sum of one hundred and twenty-five thousand dollars for the railway franchise aforesaid was due to the fact that it contained in it no obligation whatever relative to improvements or pavements of the streets through which the said franchise was laid out, and imposed no obligation of maintenance upon the purchaser thereof, except the obligation to maintain between tracks, and for two feet on each side of the tracks; that the said franchise, so advertised, by Ordinance 7462, Council Series, contained no provision whatever for public improvements, such as pavement, for the reason that a previous franchise, covering a larger portion of the same route which had been sold by the city of New Orleans to Judah Hart, and by Judah Hart sold to this respondent, was annulled by the Circuit Court of the United States, because it provided for the payment of the franchise in pavement, and that the franchise aforesaid was put up and sold by the city of New Orleans, as a compromise with the said Judah Hart, as a result of said litigation and said decision of the United States Circuit Court.

"That it is true that the said franchise provides that the lines and levels upon which the purchaser thereof is to construct said road shall be given by the City Engineer, and that the purchaser of said franchise was therefore obliged to follow any lines and levels which the City Engineer might give; but this respondent denies the right and power of the City Engineer so to change the established grade of streets as to compel respondent, in the construction of its road, to perform necessary public work which the city of New Orleans is obligated to perform under her charter and her public duties, and your respondent avers that Julia street is a very broad street; that

for many years it has been paved with a square block pavement, from curb to curb, laid upon a grade so low that Julia street has been a public nuisance from St. Charles to Dryades street, and a source of public complaint from residents and general citizens, owing to the grade established when the said pavement was laid; that as a result of.this condition of Julia street the City Council, in the year 1893, passed an ordinance making an appropriation of six thousand dollars for the purpose of raising the grade of Julia street, so as to abate the public nuisance aforesaid, and that your petitioner believed, and had a right to believe, that when the lines were given to it by the City Engineer for the construction of said road through the centre of Julia street, that the city of New Orleans would expend said appropriation in raising such portion of the grade of the street as lay outside of the limit of this respondent's obligation under the said franchise.

"And further answering, respondent says that it has laid its road through Julia street on the lines and levels given by the City Engineer; that it has not taken up or interfered with the pavement on the balance of said street lying from two feet outside of respondent's track to the counter-curb, and that the pavement of said street from the said point two feet outside of its line to the counter-curb is now in the same condition in which it has been for more than thirty years; that this respondent is not at all responsible for the lines or grades given to it by the City Engineer through the said street, and that the burden of taking up all the pavement on that street from curb to curb, putting in new filling, relaying square block, putting in new counter-curbs and going to all the expenses necessary to improve said street in accordance with the convenience of the public can not be cast upon this respondent by the grades given it by the City Engineer; that it would cost this respondent the sum of $10,000 over and above the cost of the work provided for in its franchise to raise the grade of Julia street and improve the same as required in the mandamus herein; that the whole of the square block on both sides of respondent's track to the counter-curb would have to.be taken up, that a new counter-curb, expensive in character, would have to be set in; that the lines of the gutter would have to be changed; that several thousand cubic yards of additional filling would have to be hauled into the street, and that the whole of the square block taken up as aforesaid would have to be relaid.

" This respondent admits that somebody ought to put Julia street in that condition required by the city of New Orleans, and that the track of this respondent, as now laid on said street, in the centre thereof, at a grade elevated above that of the square block on each of the streets is an inconvenience to the public and an obstruction to the said street, but this respondent denies that it is in any manner responsible for the lines or grades upon which the said track is laid, or that the whole cost of a municipal improvement in contemplation of the public prior to the time when the said track was laid could be cast upon this respondent by the City Engineer in giving it these grades.

"That this respondent avers that the City Engineer gave the grades aforesaid in order to put the track of your respondent in line with contemplated improvement of Julia street, and your respond-ent accepted the said grades in the belief that the city of New Orleans would do her share in the elevation of the grade and the improvement of Julia street from Dryades to St. Charles street; that the whole rights and obligations of this respondent to the city of New Orleans are set forth in detail in the said Ordinance No. 7462, Council Series, and the contract made in pursuance therewith by the city of New Orleans by act before Joseph D. Taylor, of date the 25th day of April, 1893; and respondent, for greater certainty and proof, makes a certified copy of the said act a part and parcel of the return herein, and craves leave at all times to refer thereto.

"Wherefore respondent prays that the demand of the relator may be dismissed with costs."

On the foregoing statement we are of opinion that there is no ground upon which relator is entitled to a writ of peremptory *man-damus*, as there is nothing to show that the legal duty of keeping Julia street in repair, or of keeping and maintaining it at the surface grade of its track, was cast upon the respondent by the terms and stipulations of the city ordinance under which it acquired its fran-chise, or the adjudication itself, except that portion of the street between its tracks, and for two feet on either side of its tracks.

The decree appealed from was in favor of the respondent.

Judgment affirmed.